UNITED STATES DISTRIST COURT
WESTERN DISTRICT OF NEW YORK

_____

In the Matter of the Arbitration of Certain
Controversies Between

JOHN PETRIE, TERI PETRIE and
DELPHI CORPORATION,

                    Petitioners,

vs.                                           Civil Action No.:

CLARK MOVING & STORAGE, INC.,

                    Respondent.

_____


## MEMORANDUM OF LAW IN SUPPORT OF CROSS-PETITION
## TO VACATE ARBITRATION AWARD


**I.**      **INTRODUCTION**

      This Memorandum of Law is submitted in Answer to the Petition of John Petrie, Teri

Petrie and Delphi Corporation (collectively "Petitioner's") to confirm the Arbitration

Memorandum Decision ("Award") of Arbitrator James E. Morris, Esq., dated July 9, 2009

(Annexed to the Petition to Confirm as Exhibit B) and in support of Respondent Clark's Cross-

Petition to Vacate the Award.  Respondent seeks to vacate based upon New York's CPLR

Article 75 and the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").  Under Article 75 the

arbitration award must be vacated because under CPLR §7511(b)(iii) the award was made in

excess of the arbitrator's authority because:  (1) the award violates a strong public policy; (2) is

irrational, and (3) clearly exceeds a specifically enumerated limitation on the arbitrator's power.

Under the F.A.A. and applicable federal case law the arbitration award must be vacated because

the award is in "manifest disregard for the law". Under either statute, the award must be vacated

for similar reasons – because the award is based upon a fundamental disregard and refusal to

apply the preemptive effect of the Carmack Amendment, which preempts all other state laws and

remedies.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     The Nature of the Underlying Case and Relevant Procedural History

The underlying matter involves a claim for property damage to the Respondent Petrie's

(also referred to as the "shipper") household goods under an interstate Bill of Lading while in the

possession of Respondent Clark Moving & Storage ("carrier" or "Clark") on April 17, 2001.

The underlying matter was initially sued in Monroe County Supreme Court, but removed to this

Court without objection.  The case proceeded with discovery and then to arbitration pursuant to

the contract terms on the reverse side of the Bill of Lading issued by Petitioner Clark.  **Cross-**

**Petition Exhibit E.**  The case proceeded to arbitration on April 17, 2009.  The arbitrator served

the award on July 16, 2009.  **Petition to Confirm ¶ 6.**  Petitioner/ Plaintiff thereafter filed a

Petition to Confirm the award in Monroe County Supreme Court.  Respondent Clark thereafter

filed a Notice of Removal and this Answer and Cross-Petition to Vacate Arbitration Award.  The

award must be vacated for the reasons set forth below.

### B.     Applicable Law Controlling the Contract and Arbitration Results

Petitioner's claim is one for damages to household goods transported interstate by a

common carrier (New York to Michigan), which is exclusively governed by federal law pursuant

to the Carmack Amendment.  *See,* 49 U.S.C. § 14706.  The Carmack Amendment to the

Interstate Commerce Act defines the parameters of carrier liability for loss and damage to goods

transported under interstate bills of lading, and is part of a comprehensive scheme designed to

2

bring uniform treatment to the carrier-shipper relationship. Coughlin v. United Van Lines, LLC, 362 F.Supp.2d 1166 (2005).   Since Congress intended to occupy the legislative field in this area, the Carmack Amendment preempts state and common law remedies where goods are damaged or lost in interstate commerce. Id.   See also, Artpack International, Inc. v. North American Van Lines, 1998 WL 132932 (S.D.N.Y.) ("The Carmack Amendment is an example of a statute that completely preempts the field it occupies.")

By enacting the Carmack Amendment, Congress has legislated directly upon the common carrier's liability for loss of and damage to interstate shipments, and this and other federal legislation on the subject of interstate commerce is supreme and exclusive, and supersedes all state laws.  (Preemption is clearly established by numerous decisions, including U.S. Supreme Court cases:  Adams Express Co. v. Croninger, 33 S.Ct. 148, 226 U.S. 491, 57 L.Ed. 314. See, also, Chicago & N.W. Ry. Co. v. C. C. Whitnack Produce Co., 1922, 42 S.Ct. 328, 258 U.S. 369, 66 L.Ed. 665; New York Cent. & H.R.R. Co. v. Beaham, U.S.Mo.1916, 37 S.Ct. 43, 242 U.S. 148, 61 L.Ed. 210; Atchison, etc., R. Co. v. Harold, Kan.1916, 36 S.Ct. 665, 241 U.S. 371, 60 L.Ed. 1050; Boston, etc., R. Co. v. Hooker, 1914, 34 S.Ct. 526, 233 U.S. 97, 58 L.Ed. 868, Ann.Cas.1915D; Kansas City Southern R. Co. v. Carl, Ark.1913, 33 S.Ct. 391, 227 U.S. 639, 57 L.Ed. 683; Chicago, etc., R. Co. v. Latta, Neb.1913, 33 S.Ct. 155, 226 U.S. 519, 57 L.Ed. 328.)

The Carmack Amendment to the Interstate Commerce Act permits a common carrier to take affirmative steps to limit its liability for the transportation of household goods.   See, 49 U.S.C. §§ 13710, 14706; and Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F.Supp 199 (WDNY 2000).   Under the cases interpreting the statue it is clearly established that a common carrier can limit liability to a published tariff or an otherwise declared value agreed between the shipper and the carrier by ensuring that the limitations of liability are "set forth in a

"reasonably communicative" form in the contract so as to result in a "fair, open, just and reasonable agreement" between the carrier and shipper, and where the contract offers the shipper a possibility of higher recovery by paying the carrier a higher rate." Martino v. Transgroup Express, 269 F.Supp2d 448 (S.D.N.Y. 2003)(Citations omitted)

The limitations must be enforced under the Carmack Amendment if it is established that the carrier: (1) maintains an approved tariff; (2) obtains an agreement with the shipper based on a choice of liability; (3) gives the shipper an opportunity to choose between levels of liability; and (4) issues a bill of lading prior to shipment. Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F.Supp 199 (WDNY 2000)(Where this Court applied the Carmack Amendment to limit damages in a similar case.)

Each element is satisfied in this case to demonstrate that Respondent Clark's agreement with Petitioner expressly limited Clark's liability in the event of loss to $.60 per pound:

Element 1. Tariffs were no longer required to be filed after 1995. Id. However, Clark was party to an approved interstate tariff (ICC 400-M), which is referenced in GMAC's September 13, 1999 letter and on the Estimate/Order for Service. **Cross-Petition Exhibit A** and **Exhibit D**. The purpose of this element is that Clark was required, **upon request**, to provide Petitioners with a copy of the rate, classification, rules and practices upon which their shipping rate was based. Schweitzer Aircraft Corp. v. Landstar Ranger, Inc.,114 F.Supp 199 (WDNY 2000). In this case, however, the Petitioners never asked for the rate or tariff information. Indeed, in this case the Petitioners dictated the tariff rate *and* the released valuation. In their letter of September 13, 1999 GMAC Relocation Services expressly did *not* request Clark's rates, and instead, dictated the rates acceptable to Delphi, writing:

**Excerpt from Cross-Petition Exhibit A**

GMAC Relocation does not have a contract with Mayflower Transit Company. Our current carrier agreements with the major moving companies is currently priced at a 60% discount off current 400M rates, with the 104 Exceptions Tariff waived. I am confident Mayflower is interested in being competitive with our carriers. In order to protect the financial interest of our valued client, Delphi, please rate this move at a 58% level off current 400M.

**Element 2.**    Clark reached an agreement with Delphi/GMAC based on a choice of liability, as dictated by the shipper.  Delphi/GMAC dictated the liability valuation they required in the September 13, 1999 letter from GMAC, as follows:

**Excerpt from Cross-Petition Exhibit A**

We also request that this shipment be released at $.60 per pound valuation. Delphi carries coverage for Household Goods claims for loss and damage through Marsh McClennan. If cargo loss or damage occurs, please refer Mr. Petrie to his GMAC Relocation counselor for advice and instructions. Property Damage remains the responsibility of the mover and any claims are to be settled promptly

Clark complied with this request of Petitioners by ensuring Teri Petrie completed the Bill of Lading with a "PER CONTRACT" notation in the valuation block as Petitioners required.  **Cross-Petition Exhibit B.**  Furthermore, Clark only billed Petitioners for the $.60 per pound release valuation that Delphi/GMAC requested.  **Cross-Petition Exhibits F and G.**  Thus, Respondent and Petitioner actually performed and conducted themselves pursuant to the contracted terms for four years.  If Petitioner wanted the declared released value of the household goods to match the actual value of the entire shipment (what Delphi, through its insurer, might have had to pay out in a potential total loss) all they needed to do was declare that valuation and pay for a higher charge to cover that valuation.

**Element 3.**    The Petitioners had the option to select different levels of valuation in three ways.  First, they didn't want a choice – they dictated it.  Second, the Petitioners' agent GMAC Relocation Services was a knowledgeable agent, as evidenced by **Cross-**

5

**Petition Exhibit A**.  It is evident they knew they could select varying levels of valuation and they selected "released at $.60 per pound valuation" because they didn't need additional coverage because they already had other existing insurance.  Third, Clark's Bill of Lading expressly contains the option to select varying levels of declared value and Mrs. Petrie, pursuant to Respondent Clark's agreement with Petitioners, and at their request, wrote in "PER CONTRACT".   Ultimately, it is clear that Petitioners chose the level of valuation they desired.

**Element 4**.     Clark issued a Bill of Lading at the time of the packing and loading.  **Cross-Petition Exhibits B and C**.  An actual signature is not required. However, in this case Mrs. Petrie actually signed the applicable Bill of Lading with the "PER CONTRACT" valuation.  **Testimony of Teri Petrie, pp. 15, 17-21.**

These facts clearly establish that the circumstances of this case meet the requirements outlined in <u>Martino v. Transgroup Express</u>, *supra*, to uphold the contractual limitations.

Having dictated the terms of the contract, the Respondents can not now claim they are entitled to reimbursement at a higher release valuation than they demanded, dictated and paid for.   As a result, Clark's liability in this matter was and is limited to $.60 per pound per item. The <u>entire</u> household goods shipment weighed 28,560 lbs.  As a result, Clark's liability in the event of a loss of the entire shipment was limited to $17,136.00, regardless of the actual value of the goods.  The contract terms were explicit and clear, and pursuant to the Carmack Amendment, and should have controlled the result of the arbitration.

C.    The Arbitration Agreement

This matter proceeded to arbitration as a result of the "Contract Terms and Conditions"

on the reverse side of Respondent Clarks Bill of Lading.  **Cross-Petition Exhibit E**.  Section 10

of the Contract Terms and Conditions states:

> "Sec.10  Any controversy or claim arising out of or relating to this
> contract, the breach thereof, or the goods affected thereby, whether
> such claim be founded in tort or contract shall be settled by
> arbitration under the Arbitration Law of the State of New York,
> and under the rules of the American Arbitration Association,
> **provided however, that upon any such arbitration the
> arbitrator or arbitrators may not very or modify and of the
> foregoing provisions**."(emphasis added)

The clause specifically states that the arbitrator can <u>not</u> vary or modify any of the

provisions of the contract – thus the arbitrator had limited powers under the arbitration clause of

the contract at issue.   Furthermore, the Contract Terms and Conditions do not contain any

general choice of law paragraph and clearly reference the limitations of the Carmack

Amendment.  Sec 2(a) reads, in pertinent part:

> "In all cases not prohibited by law, where a lower value than actual
> value has been represented in writing by the shipper or has been
> agreed upon in writing as the released value of the property as
> determined by the classification or tariffs upon which the rate is
> based, **such lower value shall be the maximum amount to be
> recovered**, whether or not such loss or damage occurs from
> negligence." (emphasis added)

The Petitioner's originally filed their Notice of Intent to Arbitrate with the American

Arbitration Association, but after counsel for both parties were dissatisfied with the panel of

available arbitrators, and one that had been selected thereafter developed a conflict of interest

and had to withdraw, the parties agreed to select an arbitrator that was not part of AAA.  That

7

agreement was reduced to writing. **Petition to Confirm Exhibit A**. Nothing in that agreement altered the terms of the arbitration clause in the contract.

    D.    <u>The Arbitration Results</u>

    The arbitration Award is annexed to the Petitioner to Confirm as Exhibit B. The Award determined that there was a separate agreement for storage; that the Carmack Amendment did not apply; and that there was no contract in effect that limited liability to .60 cents per pound. The finding that there were two contracts, one for storage and one for interstate transportation, represents a fundamental misunderstanding of the Respondents business and is inconsistent with a plethora of case law demonstrating that the final destination of a shipment dictates the interstate character of the entire transaction, and that damage that occurs in the intrastate portion of a move is still subject to the limitations of the Act.

    Furthermore, the award references a "declared value of $500,000" for the goods when that dollar amount never appears on any document as a "declared value". That value was represented by the Petitioners as the "actual value" of the goods, never as the declared value. This fundamental flaw results in an award that has no basis in law and must be vacated.

    No interest is included in the Award, and no contract or agreement between the parties ever contained any provision to permit an award for interest. Petitioner can not ask this Court to confirm an award of interest that is not part of the underlying award and Petitioner has not filed any Petition to modify. (*See* ¶ 50-51 in the Cross-Petition to Vacate.)

    E.    <u>Basis for this Cross-Petition to Vacate</u>

    This Cross-Petition to Vacate is based upon New York's CPLR Article 75 and the Federal Arbitration Act , 9 U.S.C. § 1, et seq. ("FAA"). Under Article 75 the arbitration award must be vacated because under CPLR §7511(b)(iii) the award was made in excess of the

arbitrator's authority because:  (1) the award violates a strong public policy; (2) is irrational, and (3) clearly exceeds a specifically enumerated limitation on the arbitrator's power.  Under the FAA and applicable federal case law the arbitration award must be vacated because the award is "in manifest disregard for the law".

## III.    THE STANDARD OF REVIEW

Although it is the Petitioner's position that the weight of the case law indicates that the Federal Arbitration Act applies to the arbitration and this Cross-Petition to Vacate, this Memorandum will proceed to analyze the basis to vacate the Award under both New York's CPLR Article 75 and the Federal Arbitration Act.  Under either statute, the award must be vacated for similar reasons – because the award is based upon a fundamental disregard and refusal to apply the preemptive effect of the Carmack Amendment, which preempts all other state laws and remedies.

A.    Choice of Law Issues

Multiple factors might lead to the conclusion that the arbitration proceeded under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") and that law governs the results of this petition to vacate.  The underlying matter, although originally filed in Monroe County Supreme Court, was removed without objection to the United States District Court for the Western District of New York and proceeded in that Court for several years.  The underlying transaction – the interstate shipment of household goods, "affects interstate commerce".  Furthermore, the area of law at issue in the underlying case is controlled by unique federal legislation that preempts state law and governs interstate commerce involving household goods.  In the documents that form the basis for the underlying contract, both the Petitioner and the Respondent refer to the Carmack Amendment.

Section 2 of the FAA reads in relevant part: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See*, 9 U.S.C. §2. Preston v. Ferrer, 128 S.Ct. 978, 983 (2008)   The Supreme Court of the United States has interpreted the language of Section 2 of the FAA to mean that the FAA should apply in cases where the arbitration agreement or the contract containing an arbitration provision evidences a transaction involving commerce. *See*, Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 272-279 (1995).

The US Supreme Court and the Second Circuit found that the words "involving commerce" are to be interpreted very broadly, and in fact the phrase should be deemed analogous to "affecting commerce." Id.  Furthermore, the Allied-Bruce case also held that the correct standard to apply when deciding if a sufficient nexus exists between the contract in question and interstate commerce is a "commerce in fact" interpretation rather than a "contemplation of the parties" interpretation. Id.  The court thus felt that when deciding if the FAA should apply, courts should look to see if the transaction in question **actually resulted** in interstate commerce, ignoring whether or not the parties contemplated an interstate commerce connection when they wrote the contract. *See,* Id.  The contract at issue in this case actually resulted in interstate commerce between New York and Michigan.

Following this Supreme Court precedent, the New York Court of Appeals cited to Allied-Bruce in their own application of the F.A.A., stating that "[t]hus, where a contract containing an arbitration provision 'affects' interstate commerce, disputes arising thereunder are subject to the FAA." Diamond Waterproofing Systems, Inc., v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 252

(2005). In <u>Diamond</u>, the New York Court of Appeals held that the FAA applied, even though the underlying contract contained a choice of law clause, in part because the U.S. Supreme Court had already determined that Congress had expressed an intent o exercise its Commerce Clause powers to the full extent. The Court of Appeals summed up the analysis in <u>Diamond</u> stating, "Thus, where a contract containing an arbitration provision 'affects' interstate commerce, disputes arising thereunder are subject to the FAA." <u>Diamond</u>, 4 N.Y.3d at 252.

B.    <u>Legal Standard to Vacate Arbitration Award under New York CPLR Article 75</u>

Under Article 75 of the CPLR, and specifically §7511(b) and (c) govern vacating or modifying at award. CPLR §7511(b) outlines the grounds available for vacating an arbitration award:

> 1. The award shall be vacated on the application of a party who either participated in the arbitration . . . if the court finds that the rights of that party were prejudiced by:
> (i) corruption, fraud, or misconduct in procuring the award; or
> (ii) partiality of an arbitrator appointed as neutral, except where the award was by confession; or
> (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
> (iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.
> New York CPLR §7511(b)(1)(i-iv).

Subdivisions (i),(ii) and (iv) are not applicable to the current Petition, however, subsection (iii) is applicable. New York Court state courts have interpreted subdivision (iii) as including "an award may be vacated under CPLR §7511(b)(iii) as in excess of the arbitrator's authority where the arbitrator's award *violates a strong public policy*, is *irrational*, or clearly *exceeds a specifically enumerated limitation* on the arbitrator's power." <u>In re Arbitration between Massena Cent. School Dist. and Massena Confederated School Employees' Ass'n,</u>

NYSUT, AFL-CIO, 2009 WL 1885611 (3rd Dept. 2009)(emphasis added) *citing* Matter of Henneberry v. ING Capital Advisors, LLC, 10 N.Y.3d 278, 284 (2008), *quoting* Matter of New York City Tr. Auth. v. Transport Workers' Union of Am., Local 100, AFL-CIO, 6 N.Y.3d 332, 336 (2005); *See also*, Matter of Kowaleski [New York State Dept. of Correctional Servs.], 61 A.D.3d 1081, 1082-1083 (2009).

(i)     Public Policy New York Court's have defined the scope of the public policy exception to an arbitrator's power to resolve disputes as appropriate when, "public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or **certain relief being granted by an arbitrator.**" Matter of Sprinzen, 46 N.Y.2d at 631, 415 N.Y.S.2d 974, 389 N.E.2d 456.(emphasis added).  Courts "may not vacate an award on public policy grounds when vague or attenuated considerations of a general public interest are at stake." N.Y. State Correctional Officers, 94 N.Y.2d at 327. Rather, courts will vacate an award on public policy grounds "where specific terms of the arbitration agreement violate a defined and discernible public policy; where an arbitrator exceeds his or her legal authority; or **where the final result creates an explicit conflict with other laws and there attendant policy concerns.**" Id. (emphasis added)(internal citations omitted).  In the current petition the applicable basis at issue is the later, because the Award creates an explicit conflict with Federal law and there attendant public policy and constitutional concerns.  The Court of Appeals has, more recently, outlined a two-prong test:

> First, where a court can conclude 'without engaging in any extended factfinding or legal analysis' that a law 'prohibit[s], in any absolute sense [the] particular matters [to be] decided . . . by [arbitration],' an arbitrator cannot act.  Second, an arbitrator cannot issue an award where 'the award itself 'violate[s] a well-defined constitutional, statutory, or common law of this State.'"
> United Fed'n of Teachers, 1 N.Y.3d at 80 (2003) (internal citations omitted).

12

In this Petition, the focus is on the second prong of the public policy basis – that is – that the award itself violates constitutional and statutory law. The Carmack Amendment precludes this resolution of the arbitration because the Award is in direct conflict with federal legislation on the matter. Following the language of the Court of Appeals in N.Y. State Correctional, *supra*, the Award is clearly in conflict with Federal law (the Carmack Amendment) and this creates an attendant public policy concern, namely that it is a strong public policy, and indeed Constitutionally required, to defer to Federal law under Federal preemption theories. The Award, solely based upon New York state law, and summarily dismissing the clearly applicable Federal statute, intrudes into the federal government's Commerce Clause power to regulate interstate transportation of goods under the Carmack Amendment.

(ii)    Irrational  The Award can also be vacated under CPLR §7511(b)(iii) as in excess of the arbitrator's authority where the arbitrator's award is "irrational". In re Arbitration between Massena Cent. School Dist. and Massena Confederated School Employees' Ass'n, NYSUT, AFL-CIO, *supra*. An award is "irrational" when it is not supported by evidence in the record. In re Kowaleski, 61 A.D.3d 1081, 875 N.Y.S.2d 651 (3d Dept.2009). An award is irrational if there is "no proof whatever to justify the award". NFB Inv. Services Corp. v. Fitzgerald, 49 A.D.3d 747, 854 N.Y.S.2d 457 N.Y.A.D. (2d Dept.2008) *citing* Matter of Peckerman v. D & D Assoc., 165 A.D.2d 289, 296, 567 N.Y.S.2d 416 (1st Dept.1991).

(iii)    Exceeding an Enumerated Limitation  The award can also be vacated under CPLR §7511(b)(iii) as in excess of the arbitrator's authority where the arbitrator's award demonstrates he exceeded an enumerated limitation. In re Arbitration between Massena Cent. School Dist. and Massena Confederated School Employees' Ass'n, NYSUT, AFL-CIO, *surpa*. "An arbitrator's decision may be set aside 'where the document expressly limits or is construed to

limit the powers of the arbitrators, hence, narrowing the scope of arbitration'" In re Massena
Cent. School Dist., 64 A.D.3d 859, 882 N.Y.S.2d 539 N.Y.A.D. (3d Dept.2009) *citing* Rochester
City School Dist. v. Rochester Teachers Assn., 41 N.Y.2d 578, 582, 394 N.Y.S.2d 179, 362
N.E.2d 977 [1977] [internal quotation marks and citations omitted] )

      C.    Legal Standard to Vacate Arbitration Award under the FAA

      The Cross-Petition to vacate the Award is governed by the F.A.A. because the subject
matter of the arbitration "affects interstate commerce". See Citizens Bank v. Alafabco, Inc., 539
U.S. 52, 56, 123 S. Ct. 2037, 2040 (2003); Wein & Malkin, LLP v. Helmsley-Spear, Inc., 12
A.D.3d 65, 66, 783 N.Y.S.2d 339, 339 (1st Dept. 2004). An application under the FAA is
properly brought as a petition, not an action. World Brilliance Corp. v. Bethlehem Steel Co., 342
F.2d 362, 366 (2d Cir. 1965); Kruse v. Sands Brothers & Co., Ltd., 226 F. Supp.2d 484,485-86
(S.D.N.Y. 2002).

      Applications to vacate or confirm an award may be brought before the federal court
where the primary ground for reversal is manifest disregard of federal law, or based on diversity
of citizenship. *See*, Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 24-26 (2d Cir. 2000). This
matter qualifies under both grounds because manifest disregard of federal law is the basis to
vacate the arbitration award and diversity of citizenship also exists. Furthermore, this matter
raises a federal question and comes within the purview of Courts jurisdiction under 28 U.S.C.
1331 under the "complete preemption doctrine". *See*, Caterpillar, Inc. v. Williams, 482 U.S.
386, 107 S.Ct. 2425, 96 L.Ed.2d 318 )1987) and Artpack International, Inc. v. North American
Van Lines, 1998 WL 132932 (S.D.N.Y.)("The Carmack Amendment is an example of a statute
that completely preempts the field it occupies.")

The F.A.A. §10(a) provides four bases for vacating an arbitration award:   (1)  where  the award was procured by corruption, fraud, or undue means;  (2) where there was evident partiality or corruption in the arbitrators, or either of them;   (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their own powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

In this Circuit,"[i]n addition to the statutory grounds set forth in the FAA, an award will be vacated if it is deemed to be in manifest disregard of the law." LLT Int'l, Inc. v. MCI Telecomms. Corp., 18 F.Supp.2d 349, 352 (S.D.N.Y. 1998).  *See also*, Mangan v. Owens Truckmen, Inc., 715 F. Supp 436, 439 (E.D.N.Y. 1989).  Under the "manifest disregard of the law" standard, an arbitration award must be vacated when the arbitrator knew of a governing legal principle which was well defined, explicit and clearly applicable but he refused to apply that law. *See* Stolt-Nielsen, SA v. Animalfeeds Int'l Corp., 435 F.Supp.2d 382, 384 (S.D.N.Y. 2006); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388-89 (2d Cir. 2003); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). This rule exists because judicial review must be "sufficient to ensure that arbitrators comply with the requirements of the statute" or other law involved.  Gilmer v. Interstate/Johnson Lane Corp., 500_U.S. 20, 23 n.4, 111 S. Ct. 1647, 1655 n.4 (1991); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 232, 107 S. Ct. 2332 (1987).  As set forth below, the Petitioner is able to establish manifest disregard for the law to constitute sufficient grounds for vacatur of the Award.

IV.    **ARGUMENT**

A.    The Arbitration Award Must Be Vacated Under Either Standard Applied

While this Petition argues that the FAA applies to the underlying arbitration and thereafter governs this petition to vacate the award, whether the Court finds the FAA applies, or Article 75, the result is the same – the Award must be vacated.

B.    The Award Must Be Vacated Under Article 75

(i)    The Award Violates Public Policy And Must Be Vacated

More than "vague or attenuated considerations of a general public interest" are at stake if this arbitration award is not vacated. This award directly attacks Federal preemption and Federal law that is directly controlling to not only the transaction at issue but an entire industry. Numerous courts, including this Court, and others within the Second Circuit, have applied and upheld the provisions of the Carmack Amendment.

As outlined in II(B), above, Respondents claim is one for damages to household goods transported by a common carrier interstate (New York to Michigan), which is exclusively governed by federal law pursuant to the Carmack Amendment. Whether a shipment is classified as "interstate" and, therefore, under the Carmack Amendment, "is determined by reference to the intended final destination of the shipment as that intent existed when the shipment commenced." Project Hope v. M/V Ibn Sina, 250 F.3d 67 (U.S.C.A. 2nd Cir. 2001) (citations omitted). "Thus, if the final intended destination at the time the shipment begins is another state, the Carmack Amendment applies throughout the shipment, **even as to a carrier that is only responsible for an intrastate leg of the shipment**." Project Hope v. M/V Ibn Sina, *supra.* (emphasis added). This standard was created by the U.S. Supreme Court in New York, New Haven and Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) and is often cited

in cases determining this issue. *See also*, <u>Greenwald v. Pan American World Airways, Inc.</u>, 547 F.Supp. 159 (U.S.D.C., S.D.N.Y. 1982)(District Court had subject-matter jurisdiction under the Carmack Amendment over plaintiff's claim against local carrier even though the segment of transportation performed by local carrier was entirely intrastate.)

The Arbitrator's Award is premised entirely upon a baseless finding that this matter did **not** fall within the Carmack Amendment because it was, instead, an "intrastate storage contract". This determination has no basis in fact. It is undisputed that the Petitioner's household goods were received by Respondent Clark in New York and ultimately delivered in Michigan. The intended and **actual** final destination was Michigan. The final destination city of "Bloomfield, Michigan" appears on the first document regarding this interstate move, on the Estimate/Order for Service, **Cross-Petition Exhibit D**, as follows:

| ESTIMATE/ORDER FOR SERVICE | *PRICE PROPOSAL* | | ☐ ORDER |
|---|---|---|---|
| *Shipper* | MR. AND MRS. JOHN PETRIE<br>3680 BUFFALO ROAD<br>ROCHESTER, NY 14623<br>716-381-8163 | *Consignee* | BLOOMFIELD HILLS, MI |
| *Orig Agent* | CLARK MOVING & STORAGE, INC.<br>3680 BUFFALO ROAD<br>ROCHESTER, NY 14624<br>800-999-0090 | *Carrier* | MAYFLOWER TRANSIT, INC.<br>P.O. Box 26150<br>Fenton, MO 63026-1350<br>(314) 305-4000<br>*ICC No: MC-2934* |

As outlined in III(B)(i) above, despite the deference courts generally give to an arbitration award, this Court must vacate an award that violates a strong public policy "where the final result creates an explicit conflict with other laws and there are attendant policy concerns." <u>N.Y. State Correctional Officers</u>, 94 N.Y.2d 321, 726 NE2d 462, 704 NYS2d 910 (1999)(internal citations omitted). "The focus of the inquiry is on the result". <u>Id</u>. In this case there can be no doubt that the Award creates an explicit conflict with Federal law and the policies that form the basis for that law. As noted above, it is clear that Congress intended the Carmack Amendment to uniformly regulate the industry of interstate carriers. This Award

creates an "explicit conflict" with that goal. <u>Id</u>. Deference to and observance of Federal preemption is not optional, it is a Constitutional mandate that must be respected, and is necessarily part of every states public policy. As a result, the Award in this case must be vacated because it violates a mandated public policy in deference to constitutionally mandated Federal preemption.

    (ii)    <u>The Award Is Irrational And Must Be Vacated</u>

The Award is irrational and must be vacated. An award is "irrational" when it is not supported by evidence in the record" or when there is "no proof whatever to justify the award". <u>Kowaleski</u>, *supra* and <u>NFB Inv. Services Corp. v. Fitzgerald,</u> *supra*. As outlined above, it was irrational for the Arbitrator to find that the contract for moving goods from New York to Michigan was not an interstate contract for the shipment of goods, especially because the final destination of the goods always controls the outcome of this determination. It is undisputed that the Petitioner's household goods were received by Respondent Clark in New York and ultimately delivered in Michigan. The intended and **actual** final destination was always Michigan, as evidenced by the entry of "Bloomfield, Michigan" on the Estimate/Order for Service, **Cross-Petition Exhibit D**. There is no evidence that the transaction at issue was an intrastate storage contract not controlled by the Carmack Amendment.

The award is also irrational because regardless of whether the Carmack Amendment applies or not the result of the arbitration should have been the same because the Petitioner/shipper in this case selected a release valuation of $.60 cents per pound, which is identical to the limitation under the Carmack Amendment that would apply. This is <u>not</u> a coincidence; it is the result of a knowledgeable shipper dictating and selecting the lowest rate possible to reduce the cost of the services billed by Respondent Clark. To ignore this contracted

for liability limitation when it was selected by **both** parties to the contract is irrational, and subjects the Award to vacateur.

Furthermore, the award is irrational because the alleged full value of the shipment at $500,000, which is the basis of the arbitrator's award, was **never** a part of any contract between the Petitioner and Respondent Clark. That alleged full value of $500,000 is only relevant to Delphi and their insurance carriers so they understood their potential liability above the $.60 per pound released liability they agreed to with Clark. Petitioners and their insurer voluntarily chose to take this risk. Even in the final Bill of Lading governing loss of goods during actual delivery from New York to Michigan (not applicable here and already settled with the Court's assistance at an earlier proceeding) Mr. Petrie declared the valuation of his entire shipment at "$150,000" not $500,000. The Petitioners knew and fully understood the nature of the contract limitations, and the difference between actual and declared value, and never intended to pay for coverage they didn't need. **Cross-Petition Exhibit A**, and **Testimony of Mr. Petrie, p. 38-42**. The arbitrator's use of this $500,000 total value as a basis for "declared value" was irrational. No record evidence supports a declared value of $500,000.

(iii)    The Arbitrator Exceeded Specifically Enumerated Limitations

Section 10 of the Contract Terms and Conditions expressly states that the arbitrator can not "vary or modify any of the foregoing provisions." Nothing in the Contract Terms and Conditions permitted the arbitrator to find there were two separate contracts – one for storage and one for interstate transport. Section 2(a) states, in pertinent part:

> "In all cases not prohibited by law, where a lower value than actual value has been represented in writing by the shipper or has been agreed upon in writing as the released value of the property as determined by the classification or tariffs upon which the rate is based, **such lower value shall be the maximum amount to be**

**recovered**, whether or not such loss or damage occurs from negligence." (emphasis added)

As defined by the terms of the contract, the potential damages in this case, if awarded, were limited to $.60 per pound *per item*. For example, for an antique sofa valued by the Petries at $15,000 that weighed 100 lbs, Clark's maximum liability would be $60.00 in damages *for that item*, whether it was repaired or a total loss. As a result of this limitation, the maximum award the arbitrator was permitted to award at the arbitration, which would equate to a total loss of the entire shipment, which did not occur, was limited to the total weight of the shipment multiplied by $.60 per pound. The arbitrator had no authority to exceed this enumerated limitation on his power in the contract and make an award well in excess of any contracted valuation.

Petitioner is bound by the terms of the contract with Respondent Clark and the Award can not go beyond that contract. The contract expressly called for limiting Respondent Clark's liability in the event of loss to $.60 per pound per item. Petitioners did not have to make this choice, but they did. Petitioners could have required "that the risk of loss remain totally on the carrier and, by doing so...be charged a correspondingly higher shipping rate." Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F.Supp 199 (WDNY 2000). Petitioners did not do this because they maintained other insurance to cover loss amounts above $.60 per pound.

That Petitioner did not require a higher release valuation "is not surprising since [Delphi] already had insurance which would cover the shipment" in the event of loss. One Beacon Insurance v. Haas Industries, Inc., 567 F.Supp. 2d 1138 (U.S.D.C., N.D. Cal. 2008)("[w]hy would [the shipper] increase its costs by insuring the same cargo twice?" Id. (Additional citations omitted.)

Liability to the Petitioners above $.60 per pound rests solely with Petitioner Delphi's insurer, pursuant to their agreement with Clark as outlined in **Cross-Petition Exhibit A**.

Petitioners' insurer has no recourse as against Clark for that overage because they are bound by Clark's contract with Petitioners which limits Clark's potential liability to the released amount of $.60 per pound. "Having accepted the benefit of the lower rate dependent upon the specified valuation, the [Petitioner] is estopped from asserting a higher value. To allow [Petitioner] to do so would be to violate the plainest principles of fair dealing." Mohertus Trading Co. v. United Parcel Service Co., 160 Misc.2d 259, 612 N.Y.S.2d 750 (1st Dept. 1994) citing, The Boeing Co. v. U.S.A.C. Transport, Inc., supra, 539 F.2d at 1231, quoting American Railway Express Co. v. Lindenburg, 260 U.S. 584, 592, 43 S.Ct. 206, 209, 67 L.Ed. 414.

C.    The Award Must Be Vacated Under the FAA Because of Manifest Disregard for the Law

As outlined above in III(C) an arbitration award that is premised upon a "manifest disregard for the law" must be vacated. To vacate an award under this basis the Respondent must prove that an arbitrator (1) knew of a governing legal principle but he refused to apply law and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case. Stolt-Nielsen, SA v. Animalfeeds Int'l Corp, supra. Both prongs of the test are met in the instant case.

There can be no dispute that the arbitrator knew about the Carmack Amendment and the Contract Terms and Conditions at the time of the arbitration because the Respondent extensively briefed the issue in the submissions to the arbitrator and included the contract terms as an Exhibit. See, **Cross-Petition Exhibits E, I** and **K**. Furthermore, the Carmack Amendment is "well defined, explicit and clearly applicable" to this arbitration. The Respondent cited the statue, as well as numerous cases applying the statute to claims like that presented here by the Petitioner. Furthermore, the Respondent's submissions also outlined the issue of federal preemption and Second Circuit cases clearly holding that the Carmack Amendment preempts

state law and should have determined the outcome of the arbitration.  The arbitrator knew about the governing law but refused to apply that law to this case.

The arbitrator summarily ignored the applicable Federal law, despite the fact it was well defined, explicit and clearly applicable.  The Act is well defined and explicit and there is a plethora of case law interpreting the statute and actually applying and upholding its limitations in cases nearly identical to this matter.  *See*, for example, <u>Martino v. Transgroup Express</u>, 269 F.Supp2d 448 (S.D.N.Y. 2003).  In fact, numerous cases, cited by the Respondent in the submissions to the arbitrator, and the documents underlying the transaction, clearly indicated that the Act was well known in the Respondent's industry, and to Petitioner.

Furthermore, the Carmack Amendment was clearly applicable to this contract for the interstate transportation of household goods.  There can be no dispute that the underlying transaction in fact <u>resulted</u> in an interstate transaction, because it is undisputed that the goods originated in New York and ended up in Michigan. All the documents and proof evidencing this simple fact was provided to the Arbitrator with the submissions.  (Cross-Petition Exhibits A through G, and all the testimony taken in the case, were provided as attachments to the Respondents submissions and were referenced therein.)  The Respondent's own documents, which dictated the terms of the relationship with Petitioner Clark, as well as the Contract Terms and Conditions and the Bills of Lading, reference the Act's limitations.

Whether a shipment is classified as "interstate" and, therefore, under the Carmack Amendment, "is determined by reference to the ***intended final destination*** of the shipment as that intent existed when the shipment commenced." <u>Project Hope v. M/V Ibn Sina</u>, 250 F.3d 67 (U.S.C.A. 2nd Cir. 2001) (emphasis added)(citations omitted). "Thus, if the final intended destination at the time the shipment begins is another state, the Carmack Amendment applies

throughout the shipment, *__even as to a carrier that is only responsible for an intrastate leg of the__* *__shipment__*." Project Hope v. M/V Ibn Sina, *supra.* (emphasis added). This standard was created by the U.S. Supreme Court in New York, New Haven and Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) and is often cited in cases determining this issue. *See also*, Greenwald v. Pan American World Airways, Inc., 547 F.Supp. 159 (U.S.D.C., S.D.N.Y. 1982)(District Court had subject-matter jurisdiction under the Carmack Amendment over plaintiff's claim against local carrier even though the segment of transportation performed by local carrier was entirely intrastate.)

This case therefore clearly involves the interstate shipment of household goods and falls squarely within the Carmack Amendment. The fact that there are isolated portions of the transaction that are intrastate does not destroy the overall interstate character of the transaction. When Ms. Petrie was asked why the goods were packed in 1999 she testified, "Because at that time my husband had taken a different position and we knew we'd no longer be coming back to Pittsford, New York." **Testimony of Mrs. Petrie p. 6**. The arbitrator knew about this well defined, explicit and clearly applicable legal authority but refused to apply it, in manifest disregard of the law.

## V.    CONCLUSION

The Award must be Vacated for the reasons stated within this Memorandum, regardless of whether the analysis is done under New York's Artilce 75 or the FAA. Numerous cases, cited throughtout this Memorandum, establish that the Carmack Amendment controls the outcome of this claim, whether in arbitration or litigation. In Martino v. Transgroup Express the U.S.D.C., S.D.N.Y. upheld a $.60 per pound contracted liability valuation limiting liability to $179.40 for an alleged $500,000 loss as a result of damage to a $3,000,000 fine art painting. The District

Court held that "under the Carmack Amendment, 49 U.S.C. 14706, carriers' limitations of liability are enforceable provided that they are set forth in a "reasonably communicative" form in the contract so as to result in a "fair, open, just and reasonable agreement" between the carrier and shipper, and where the contract offers the shipper a possibility of higher recovery by paying the carrier a higher rate." Martino v. Transgroup Express, 269 F.Supp2d 448 (S.D.N.Y. 2003)(Citations omitted). The results in Martino are directly applicable to this matter, and the results should be the same – upholding the contracted for liability valuation terms chosen by the Petitioner shipper - limiting liability to $.60 per pound per item. The arbitration was bound to apply that limitation to this case, and was not permitted to change the contract. The Award must be vacated.

DATED:     Buffalo, New York
           September 30, 2009

                              /S/ Robert G. Scumaci
                              Robert G. Scumaci, Esq.
                              **GIBSON, McASKILL & CROSBY, LLP**
                              Attorneys for the Respondent
                              Clark Moving & Storage, Inc.
                              69 Delaware Avenue, Suite 900
                              Buffalo, New York 14202
                              Telephone: (716) 856-4200


TO:   Mandy McFarland, Esq.
      THORN GERSHORN TYMANN AND BONANNI, LLP
      Attorneys for the Petitioners
      John Petrie, Teri Petrie and Delphi Corporation
      5 Wimbley Court, New Karner Road
      P.O. Box 15054
      Albany, New York 12212-5054
      Telephone: (518) 464-6770