UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
In the Matter of the Arbitration of Certain
Controversies Between

John Petrie, Teri Petrie and
Delphi Corporation,

                    Petitioners,

               v.

Clark Moving & Storage, Inc.,

                    Respondent.
_____

09-CV-06495

**DECISION
AND ORDER**

## <u>INTRODUCTION</u>

Before this Court is a motion to confirm an arbitration award
and a cross-motion to vacate the same arbitration award. The award
stems from a dispute going back to 1999 when John Petrie and Teri
Petrie (the "Petries" and/or "petitioners") as well as Delphi
Corporation ("Delphi") contracted with Clark Moving & Storage, Inc.
("Clark Moving" and/or "respondent") to store and ship the Petries'
household goods. The underlying dispute was initially handled in
Monroe County Supreme Court. The case proceeded with discovery and
then to arbitration pursuant to the terms of the contract issued by
Clark Moving. The arbitrator issued an award favorable to the
Petries. Thereafter, the Petries filed a Petition to Confirm the
arbitration award in Monroe County Supreme Court. The case was
removed to this Court without objection and Clark Moving filed a
cross-motion to vacate the arbitration award. Under a limited
standard of review, this Court cannot disturb the arbitrator's

award unless Clark Moving proves by clear and convincing evidence that the award is premised on a manifest disregard of the law. I find that the arbitration award is confirmed and the remaining question of whether to award interest remains with the parties.

**BACKGROUND**

I. **Facts**

In 1999, John and Teri Petrie, along with John's employer, Delphi Corporation, planned to have Clark Moving move the Petries' household goods from their home in Pittsford, New York, to a storage facility in Rochester under the control of Clark Moving. Under this arrangement, Clark Moving packed and stored over 28,000 pounds of the Petries' household goods. The contract signed by the Petries insured the goods at a rate of $.60 per pound per item. Delphi's agent, GMAC Relocation Services, informed Clark that they would not pay for a higher valuation. The actual values of the goods equals approximately $500,000. Deplhi paid the storage costs until June 2002.

Sometime in 2001, a leak developed at the storage facility causing extensive damage to the Petries' household goods. In 2003, the Petries' arranged for Clark Moving to move the household goods to their new residence in Michigan. When the goods arrived in Michigan, the Petries discovered their household goods had mold and water damage.

## II.  Procedural Posture

As background but not necessary to this dispute, a battle between the insurance carriers ensued. The Petries' have been made whole and have assigned any right of recovery against Clark Moving to Delphi. Before the arbitration, the Petries and Delphi sued Clark Moving in state court alleging, inter alia, negligence and breach of contract. See Docket #8(2) – Verified Complaint. In January 2009, the parties entered into a binding arbitration agreement. The parties provided submissions before the arbitrator in April 2009 and the arbitrator heard live testimony.

## III. The Arbitration

Clark Moving's contractual liability forms the center of this dispute. Clark Moving contends that since 1999, the character of this transaction has been one involving interstate commerce. Accordingly, Clark Moving argues that the Carmack Amendment, 49 U.S.C. § 14706 ("Carmack Amendment"), applies because the final destination of the goods was Michigan. Under the Carmack Amendment, a common carrier can limit its liability to a published tariff or an otherwise declared value agreed to between the shipper and the carrier by ensuring the contract sets forth the limitations in a "reasonably communicative" manner in a "fair, open, just and reasonable agreement between the carrier and shipper and  where the contract offers the shipper the possibility of higher recovery by paying the carrier a higher rate." Martino v. Transgroup Express,

269 F.Supp 2d 448, 449 (S.D.N.Y. 2003) (citations omitted). Clark Moving submits it fulfilled this test and the parties agreed to insure the goods at a rate of $.60 per pound per item.

The Petries and Delphi argued, and the arbitrator agreed, that there were two contracts involved in this transaction–one for storage in 1999 and a separate agreement in 2003 to move the goods. Reasoning that the Carmack Amendment would not apply, the arbitrator found that there was correspondence before the goods were placed in storage showing an actual value of $500,000. The arbitrator ignored the $.60 per pound per item contractual limitation because Clark Moving did not offer the Petries a higher-valued insurance plan as required by law to under-insure household goods. The award also states that "[n]o award is made for interest." After a clarification, the arbitrator stated this was not meant to eliminate an award of interest, but rather notify the parties that the $500,000 should be allocated entirely to principal and that the determination of interest rests with the parties.

The arbitrator issued the award in August 2009. Petitioners, moved in state court to confirm the award, but respondent successfully removed this action to federal court and cross-motioned to vacate the award.

## DISCUSSION

### I.    Scope of Review–Federal or New York law?

The parties dispute whether this Court must review the award

4

under the Federal Arbitration Act ("FAA") or New York's CPLR.
Because the FAA would preempt any state law on enforcing
arbitration agreements, an exploration of the FAA's applicability
seems warranted.

Section 2 of the FAA provides:

> A written provision in any maritime transaction or *a
> contract evidencing a transaction involving commerce* to
> settle by arbitration a controversy thereafter arising
> out of such contract or transaction, or the refusal to
> perform the whole or any part thereof, or an agreement in
> writing to submit to arbitration an existing controversy
> arising out of such a contract, transaction, or refusal,
> shall be valid, irrevocable, and enforceable, save upon
> such grounds as exist at law or in equity for the
> revocation of any contract.

9 U.S.C. § 2 (emphasis added).

The FAA thus deems valid and enforceable an arbitration clause
in a contract evidencing a transaction involving commerce. Id. The
Supreme Court has found that Congress meant to define "involving
commerce" "as the functional equivalent of the more familiar term
'affecting commerce'–words of art that ordinarily signal the
broadest permissible exercise of Congress' Commerce Clause power."
Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). Thus, any
contract "affecting" commerce that contains an arbitration clause
must be reviewed under federal law.

For a contract to affect commerce, the contract itself need
not contemplate interstate commerce. See Allied-Bruce Terminix
Companies, Inc. v. Dobson, 513 U.S. 265, 278, (1995). If the
transaction in fact involved interstate commerce, FAA principles

5

govern. See id. "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control." Citizens Bank, 539 U.S. at 56-57 (internal quotation marks omitted).

The Petries and Deplhi argue that because this case involved only a storage contract between a New York company (Clark Moving) and New York residents (the Petries), this contract did not involve commerce. But by focusing on the character of only the initial contract, the Petries ignore the fact that the arbitration concerned both the 1999 agreement, the 2003 agreement, and their relatedness. Their arguments rest in large part on accepting the arbitrator's decision that there were two separate agreements. However that decision necessarily analyzed the 2003 contract, which undisputably involved interstate commerce.

The contracts affect commerce in at least three ways. First, Delphi, a corporation with operations in numerous states, paid the storage costs for almost 3 years. Second, the Petries used Clark Moving for storage while the they moved overseas and eventually to Michigan. Third, the general practice of a moving and storage company such as Clark Moving affects commerce because its business model involves the movement of persons in and around several states. Therefore, the Court finds that the FAA governs the scope

6

of this Court's review.

The parties address the alternative argument that New York's CPLR applies to this Court's review of the arbitration award. Section 7511 of the CPLR supplies four grounds for vacating an award upon application of a party to the arbitration.[1] The party seeking vacatur has the burden to prove the above grounds by clear and convincing proof. See Disston Co. v. Aktiebolag, 176 A.D.2d 679 (1st Dep't 1991). "Judicial review of an arbitrator's award is extremely limited and a review court may not second the fact-finding of the arbitrator." See Liberty Mut. Ins. Co. v. Sedgewick of New York, 43 A.D.3d 1062, 1063 (2d Dep't 2007). In this case, Clark argues this court should vacate the award based on the grounds listed in subdivision three, where the arbitrator exceeded his authority in making the award or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made. New York courts interpret subdivision three to provide three subsets for vacatur, namely where the award 1) violates a strong public policy, 2) is irrational or 3) exceeds a specifically enumerated limitation on the arbitrator's power. See In re Massena Cent. School Dist., 64 A.D.3d 859, 860 (3d Dep't 2009). Because the FAA governs this dispute, the Court will not go

---

[1]The four grounds are as follows: First, where corruption, fraud, or misconduct prejudiced the party. Second, upon a showing of partiality by the arbitrator. Third, where the arbitrator exceeded his authority in making the award or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made. Or fourth, for failure to follow the procedures of Article 75 of the CPLR. § 7511. See McKinney's CPLR § 7511(b)(1)(i)-(iv).

into detail regarding each subset. In any event, the scope of review remains deferential and this Court's review under either the Federal or New York law remains limited. The parties agreed to submit this matter to binding arbitration, and this Court cannot substitute its own judgment for that of the arbitrator's. The arbitrator in the present case heard extensive argument from both sides and heard live testimony before making the award. Clark Moving has not met its burden under either the FAA or the CPLR to vacate the award.

## II. Confirmation of Arbitration Award

Section 9 of the FAA describes the process by which a party applies to a court to confirm an arbitration award. Within one year after the award is made, "any party to arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of title 9. See 9 U.S.C. 9. "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgement of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision

8

can be inferred from the facts of the case[.]" Id. (internal quotation marks omitted).

The FAA dictates a limited review by this Court for motions to vacate an arbitration award. Section 10 of the FAA permits vacatur 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators, or either of them 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or refusing to hear evidence pertinent and material . . . or of any other misbehavior by which the rights of any party have been prejudiced; or 4) where the arbitrators exceeded their powers, or so improperly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. See 9 U.S.C. § 10. Clark Moving does not argue one of these grounds applies, instead it relies on a different standard, namely manifest disregard of the law. "Manifest disregard" serves as a catch-all provision for grounds that do not fall into one of the four enumerated categories. The Second Circuit has outlined the principles of this standard and a three step process for following it.

Manifest disregard of law "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003). "A party seeking vacatur bears the burden of

9

proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Id.

These principles bring about a three-step inquiry. First, a court "must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators." Id. at 389-90; see Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 209 (2d Cir. 2002). "An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard." Duferco Intern. Steel Trading, 333 F.3d at 390. "Second, once it is determined that the law is clear and plainly applicable, [a court] must find that the law was in fact improperly applied, leading to an erroneous outcome." Id. If application of the correct law would yield the same result, the award still must be confirmed. "Third, once the first two inquiries are satisfied, we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him." Id.

### III. Application of the Manifest Disregard Standard

Clark Moving contends here, as they did at the arbitration, that the Carmack Amendment determines the outcome of this dispute.

10

The Carmack Amendment establishes a uniform system of liability for interstate shipment of goods. In this case, the Arbitrator found two separate contacts existed–a 1999 storage contract and a 2003 shipment contract. In this regard, the arbitrator heard testimony from Clark Moving's agent on the separate nature of the two agreements. Clark Moving argues that under the Carmack Amendment the final destination of the goods determines the character of the contract. Clark Moving's argument amounts to a misapplication of the Carmack Amendment by the arbitrator, not an intentional disregard. The arbitrator only need a colorable basis for the award. A finding that two contracts existed is supported by the record. Misapplication of the law is not enough, and this Court cannot substitute its judgment for the arbitrator's. See Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992).

In addition, Clark Moving disputes the arbitrator's award of $500,000 since even the 1999 contract limits Clark's liability to $.60 per pound per item. The arbitrator found an ambiguity in whether Clark ever *offered* a higher insurance premium as required by law to under-insure the Petries goods. Further, the record shows correspondence between the parties that shows the actual value of the goods to be $500,000. This Court cannot disturb findings of fact. If it did, the strong public policy in favor of speedy, effective arbitrations would be severely undermined because a

11

confirmation motion would mark the start, not the end of the dispute. The parties bargained for an arbitration and must accept the award. Accordingly, the arbitration award is confirmed.

IV. **Interest**

The Petries and Delphi argue that this Court should award pre-award interest according to CPLR 5004, which states that interest must be 9% unless otherwise provided by statute. Clark Moving contends that because the Petries have not asked this Court to *modify* the award, this Court cannot add interest. Arbitrators may provide for pre-award interest as part of their award upon which judgment enters, but, "'if the award is silent on pre-judgment interest, a court is not entitled to award such interest.'" Shamah v. Schweiger, 21 F.Supp.2d 208, 217 (E.D.N.Y.,1998) (quoting Moran v. Arcano, 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990)); see also In re Gruberg, 531 N.Y.S.2d 557, 558 (1988); Brandeis Intsel Ltd. v. Calabrian Chems. Corp., 656 F.Supp. 160, 170 (S.D.N.Y.1987) (finding pre-award interest, if granted, becomes a part of the arbitration award).

The arbitration award and the subsequent clarification by the arbitrator only states that the parties should determine the computation of the interest. See Docket # 8(13) - July 16, 2009 Clarification Letter of Arbitrator. It also noted that the computation of the pre-judgment interest was left for resolution by the attorneys. The award however is silent on the amount of

12

pre-judgment interest. Accordingly, a court is not entitled to award an amount relating to such pre-judgment interest. See Shamah, 21 F.Supp.2d at 217. Therefore, the parties must determine the applicable interest rate and calculate the amount due.

## CONCLUSION

Based on the foregoing, the Petries' motion to confirm the arbitrator's award is granted and the arbitrator's award is confirmed. Clark Moving's cross-motion to vacate the arbitrator's award is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          May 17, 2010